ABE MEYER ET AL. v. W. G. PAXTON AND WIFE.

No. 248.

**1. Attachment on Homestead Afterwards Abandoned.**—The following charge was wrongfully refused: " If you believe the land in controversy was the home of J. B. Freeland when the attachment was levied, the attachment was void, and Freeland removing off the land and to Panola County would not give validity to said attachment." The levy, if on a homestead, was a nullity, and the abandonment of the homestead subsequent to the levy could not give validity to a nullity, nor create a lien where none existed before.

**2. Unforeclosed Vendor's Lien—Effect of, in a Trial of Title to Land.**—Although the attachment was issued in a suit upon a note given for the purchase money of land, and to secure which a vendor's lien had been retained, effort was never made to foreclose the lien, nor rescind the sale, but all efforts were directed towards the collection of the note by the proceedings under the attachment, and the title of the appellee grew out of the sale under the foreclosed attachment; therefore this case must depend upon the title secured through the attachment proceedings.

APPEAL from Shelby.  Tried below before Hon. GEORGE F. INGRAHAM.

*Tom C. Davis*, for appellants.— 1.  If at the time of the levy of the attachment the land was the homestead of Freeland, the levy of the attachment was void; and if void in the beginning, no subsequent removal from the land would give to it any validity.

2.  Mere removal from a homestead is not an abandonment.  Paxton v. Meyers, 78 Texas, 199; Willis v. Matthews, 46 Texas, 478; Foreman v. Merona, 62 Texas, 723.

3.  The court erred in the fifth paragraph of the charge to the jury, wherein the jury are instructed as to the effect of a deed given for land reserving a lien for the purchase money, because there were no facts in the case authorizing said charge.

4.  The court erred in the seventh paragraph of the charge of the court, wherein the jury are again instructed as to the effect of a deed and note given for the purchase money, because said instructions were not applicable to the facts of the case.

*E. B. Wheeler*, for appellees.— 1.  It was not error in the court to refuse appellants' first special charge, because it did not contain the law of the case as made before the court by the evidence.  Lawder v. Rounsaville, 12 Texas, 195; Huffman v. Mulkey, 78 Texas, 556; Dunlap v. Wright, 11 Texas, 596; Hecks v. Morriss, 57 Texas, 664; Joiner v. Pickins, 59 Texas, 300.

2.  The court did not err in the fifth paragraph of the charge, because it is the law, that where one party sells land on a credit to another, and takes note to evidence the indebtedness, expressing a vendor's lien on

the land to secure the purchase money in the note, and in making the deed of conveyance express a lien on the land thus sold to secure the purchase money, no homestead right can be set up by the purchaser of the land or his assigns as against the party holding the purchase money note until the price of the said land be fully paid. Hines v. Thorn, 57 Texas, 98; Given v. Garner, 50 Texas, 54; Baker v. Ramey, 27 Texas, 52..

WILLIAMS, ASSOCIATE JUSTICE.—This case has been twice before the Supreme Court, and will be found reported in 67 Texas, 96, and 78 Texas, 199. Its character and the questions upon which it depends are sufficiently indicated in those reports.

At the last trial the defendants, who are the present appellants, asked the court to charge the jury as follows: " If you believe the land in controversy was the home of J. B. Freeland when the attachment was levied, the levy of the attachment was void, and Freeland removing off the land and to Panola County would not give any validity to said attachment." This charge was refused, and the general charge contained no equivalent instruction. The rule laid down in the requested instruction was a correct application of the ruling of our Supreme Court in the last appeal of this case, though it does not appear that the question as to the effect of an abandonment of the homestead subsequent to the levy of an attachment was raised before the Supreme Court. The language used in that decision is: " If the land in controversy was the homestead of Freeland at the time the attachment was levied upon it, the levy was a nullity as to the 200 acres including the residence, and no lien was created except upon the excess." An abandonment of the homestead subsequent to the levy would not give validity to a nullity, and would not create a lien where none before existed. The charge should have been given, and the decision of the case should have been made to depend upon the issue whether or not the land was the homestead of Freeland at the date of the levy.

The plaintiffs showed that G. W. Weaver, under whom they claim, sold the land to Freeland before it was patented, taking Freeland's note for the purchase money, in which, as well as in the deed which he executed to Freeland, a lien for the purchase money was retained, thus making the contract executory. The land, however, was subsequently, in 1859, patented to Freeland as a pre-emptor by virtue of his possession of same, and the legal title was thereby vested in him, and passed to defendants claiming under him.

The suit in which the attachment was issued was brought upon the note given for the purchase money. There is some uncertainty about the dates and the chronological order of all these transactions, and much conflict in the evidence as to whether Freeland took possession of the land and made it his homestead under his purchase from Weaver before or after the latter

caused the attachment to be levied on it. On another trial the case should be submitted on that issue.

After this great lapse of time, and in view of the fact that Weaver sued Freeland on the note given for the purchase money and caused an attachment to be levied on the land to secure it, and of the fact that Weaver neither asserted his lien for the purchase money nor rescinded the contract, but directed all of his efforts toward the collection of the note, the plaintiffs can not avail themselves of any right which Weaver had, growing out of the sale to Freeland, but their case must depend upon the title secured through the attachment proceedings.

*Reversed and remanded.*

Delivered June 15, 1893.