# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0847
════════════

RON SOMMERS, AS CHAPTER 7 TRUSTEE FOR ALABAMA AND DUNLAVY, LTD.,
FLAT STONE II, LTD.,  AND FLAT STONE, LTD., AND AS SUCCESSOR IN INTEREST TO JAY
COHEN, INDIVIDUALLY AND AS TRUSTEE OF THE JHC TRUSTS I AND II, PETITIONER,

v.

SANDCASTLE HOMES, INC., RESPONDENT

*- consolidated with -*

════════════
No. 15-0848
════════════

RON SOMMERS, AS CHAPTER 7 TRUSTEE FOR ALABAMA AND DUNLAVY, LTD.,
FLAT STONE II, LTD., AND FLAT STONE, LTD., AND AS SUCCESSOR IN INTEREST TO JAY
COHEN, INDIVIDUALLY AND AS TRUSTEE OF THE JHC TRUSTS I AND II, PETITIONER,

v.

NEWBISS PROPERTY, LP, RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued February 9, 2017**

JUSTICE BROWN delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE GUZMAN, and JUSTICE BOYD joined.

JUSTICE LEHRMANN filed an opinion concurring in part and dissenting in part.

JUSTICE WILLETT filed a dissenting opinion, in which CHIEF JUSTICE HECHT and JUSTICE DEVINE joined.

*Black's Law Dictionary* tells us that to "expunge" is "[t]o remove from a record[;] . . . to erase or destroy."[1] Today we must decide just how much notice is "erased" or "destroyed" when a statute expunges a notice of pending litigation, or lis pendens. Sandcastle Homes, Inc., and NewBiss Property, LP, each bought real property involved in a title dispute. The two companies prevailed at the summary-judgment stage, successfully arguing that Property Code section 12.0071—the lis pendens-expunction statute—eliminated any and all actual or constructive notice of the dispute.[2] Sommers appealed, arguing that the statute does not eliminate the companies' independent notice of the underlying property dispute.

In a split opinion, the court of appeals affirmed. But we hold today that the majority's interpretation conflicts with the statute's plain language. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

---

[1] *Expunge*, BLACK'S LAW DICTIONARY 702 (10th ed. 2014).

[2] This statute has been amended, effective Sept. 1, 2017. *See* Act of May 9, 2017, 85th Leg., R.S., S.B. 1955 (to be codified as an amendment to Tex. Prop. Code § 12.0071) ("The change in law made by this Act applies only to a certified copy of an order expunging a notice of lis pendens recorded on or after the effective date of this Act.").

2

I

Jay Cohen was trustee of JHC Trusts I & II (the Cohen Trusts).[3] In this capacity, he transferred several properties belonging to the trust into different partnerships. One instance involved "the West Newcastle property," which Cohen transferred to Flat Stone II, Ltd., a limited partnership. In June 2006, Matthew Dilick, the controlling shareholder of Flat Stone II of Texas, Inc., Flat Stone II's general partner, gave Regions Bank a first-lien deed of trust on the West Newcastle Property as collateral for a personal loan. Dilick defaulted and entered into a foreclosure-forbearance agreement with the bank in April 2009. Two weeks later, Dilick created a limited partnership called West Newcastle, Ltd. He then conveyed a tract from the West Newcastle property (Tract I) to this new limited partnership. Cohen sued, alleging Dilick fraudulently transferred the property and acted outside his authority in all the transfers and subsequent transactions. Cohen filed notices of lis pendens on the various pieces of property involved in the suit.

One of the notices of lis pendens dealt specifically with the West Newcastle property and stated that the purpose of the underlying suit was to invalidate the transfer of property to West Newcastle Ltd. and to set aside and cancel any liens Flat Stone II granted, through Dilick, to Regions Bank. The trial court granted the defendants' emergency motions to expunge the notices of lis pendens. Cohen sought mandamus relief in the court of appeals and obtained a stay of the trial court's expungement order. But while the matter was pending at the court of appeals, Dilick conveyed Tract I to Sandcastle for $750,000.

---

[3] Cohen was the named appellant in the court of appeals. Ray Sommers is the bankruptcy trustee for the partnerships involved and Cohen's successor in interest as trustee for the Cohen Trusts. Therefore, Sommers has replaced Cohen as the named petitioner.

3

The court of appeals conditionally granted Cohen mandamus relief, holding the trial court erred when it found Cohen's pleading did not articulate a real-property claim on its face.[4] Back at the trial court, Cohen added Sandcastle as a defendant and sought to set aside its recent purchase of Tract I. After another hearing on the applications to expunge the lis pendens notice, the trial court again ordered the lis pendens expunged—finding that Cohen "failed to establish by a preponderance of the evidence the probable validity of a real property claim."[5] Meanwhile, between the hearing and the trial court's entering of the expungement order, Dilick transferred the remainder of the West Newcastle property (Tract II) back to Flat Stone II. Cohen filed another mandamus petition and a motion to stay in the court of appeals, but the court denied his requests. Dilick subsequently sold Tract II to NewBiss for $1.8 million. Cohen added NewBiss as a defendant to the lawsuit, seeking to set aside this latest purchase.

Sandcastle and NewBiss claimed bona-fide-purchaser status, and each filed summary-judgment motions. Both claimed they lawfully relied on the trial court's expungement order, which voided any notice derived from the lis pendens. The trial court granted both motions and rendered separate final judgments.

A divided court of appeals affirmed, holding that the expunction statute extinguishes actual and constructive notice of the underlying claims. 469 S.W.3d 173 (Tex. App.—Houston [1st

---

[4] *In re Cohen*, 340 S.W.3d 889, 900 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding); *see also* TEX. PROP. CODE § 12.0071(c)(1) (authorizing expunction of a notice of lis pendens where the pleading in the underlying suit does not contain a cognizable real-property claim).

[5] *See* TEX. PROP. CODE § 12.0071(c)(2) (authorizing expunction of a lis pendens notice where the claimant fails to establish the probable validity of the real-property claim by a preponderance of the evidence).

Dist.] 2015). Two days before the court of appeals issued its opinion, the underlying lawsuit was removed to bankruptcy court, though the claims involving Sandcastle and NewBiss were severed and remained in the trial court. Several months later, the bankruptcy court entered a final declaratory judgment granting Sommers's motion to realign claims. Sommers subsequently brought this appeal.

## II

### A

Sandcastle and NewBiss contend Sommers lacks standing to continue the appeal in this case because he was not a named party in the original action. Generally, only a named party to the suit may bring an appeal. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754 (Tex. 2003). But here, the bankruptcy court issued a declaratory judgment that Sommers is the proper plaintiff since the claims against Sandcastle and NewBiss belong to the bankruptcy estate.[6] The judgment explicitly provides that the claims belong to Sommers as the bankruptcy trustee.[7]

We have held that once claims clearly belong to the bankruptcy estate, "then the trustee has exclusive standing to assert the claim[s]." *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999) (quoting *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994)); *see also* 11 U.S.C. § 323(a) (stating that the bankruptcy trustee is

---

[6] Final J. on Decl. J., *In re Ala. & Dunlavy, Ltd., Flat Stone II, Ltd., & Flat Stone, Ltd.*, [15-03190] Bankr. S.D. Tex. (Nov. 16, 2015).

[7] *Id.* at 1.

the representative of the estate). The bankruptcy court recognizes Sommers's authority to pursue claims against Sandcastle and NewBiss on behalf of the estate.[8] So do we.

B

1

Pending the outcome of an action involving proper title to, establishing an interest in, or enforcing an encumbrance against real property, the party seeking relief may file a notice of lis pendens in the county's real-property records. *See* TEX. PROP. CODE § 12.007(a). A notice of lis pendens broadcasts "to the world" the existence of ongoing litigation regarding ownership of the property. *Id.* § 13.004(a). When the notice is properly filed, even a subsequent purchaser for value does not take the property free and clear. *See id.* § 13.004(b).

We have explained that a lis pendens functions to provide constructive notice,[9] avoid undue alienation of property,[10] and facilitate an end to litigation.[11] Through the years, the courts of appeals have held the same.[12] The latter two purposes are particularly implicated when we address the court's

---

[8] *See id.* (referencing Sommers's Amended Original Complaint, which names Sandcastle and NewBiss as defendants in the estate's claims).

[9] *See Lee v. Salinas*, 15 Tex. 495, 498 (1855).

[10] *See Rippetoe v. Dwyer*, 65 Tex. 703, 707 (1886).

[11] *See City Nat'l Bank v. Craig*, 257 S.W. 210, 211 (Tex. 1923) (citing *Lee*, 15 Tex. at 497 and *Rippetoe*, 65 Tex. at 707).

[12] *See In re Miller*, 433 S.W.3d 82, 84–85 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (recognizing the purpose of a lis pendens notice is to provide constructive notice); *Killam Ranch Props., Ltd. v. Webb Cty.*, 376 S.W.3d 146, 159–60 (Tex. App.—San Antonio 2012, pet. denied) (same); *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that the notice's purpose is to prevent alienation and provide constructive notice); *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406, 413–14 (Tex. App.—Dallas 2009, pet. denied), *cert. denied*, 561 U.S. 1006 (2010) (explaining the purpose of the lis pendens statute is to provide constructive notice); *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (recognizing constructive notice and the prevention of undue alienation as the general purposes of

6

ability to *expunge* a notice of lis pendens. The trial court may expunge a notice of lis pendens if (1) the pleading on which the original order rests does not include a real-property claim; (2) the claimant does not appropriately establish the probable validity of his real-property claim; or (3) the claimant fails to serve a copy of the record notice on all entitled to receive it. TEX. PROP. CODE § 12.0071(c)(1)–(3). Here, Sandcastle obtained the first expunction order because the trial court found Cohen's pleadings did not include a real-property claim, while the second order was based on Cohen's inability to establish the probable validity of his claim.

2

We review de novo the trial court's decision to grant Sandcastle's and NewBiss's summary-judgment motions based on the effect of the second lis pendens expunction. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). The movant must show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). We read the record in the light most favorable to the non-movant, with every reasonable inference favoring the non-movant and all doubts resolved against the movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 822–23 (Tex. 2005). But this case also involves a question of first impression for this Court—one of statutory interpretation, which we also review de novo. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014).

lis pendens); *In re Collins*, 172 S.W.3d 287, 292–93 (Tex. App.—Fort Worth 2005, orig. proceeding) (stating the statute's purpose is constructive notice); *Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex. App.—Texarkana 1992, writ denied) (citing *City Nat'l Bank*, 257 S.W. at 210) (identifying the public policy of the lis pendens statute is to end litigation).

Today the parties ask us to decide one basic question: When a notice of lis pendens is expunged, is all notice—no matter the sort and no matter its source—extinguished with the expunction order? The interpretation of legal texts, distilled down, concerns one question: What does the language mean? The statutory language itself is what constitutes the law. "Our basic presumption: legislators enact; judges interpret." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, xxx (2012) (citations omitted). We presume the Legislature intended precisely what it enacted and strive to give statutory language its fair meaning. *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). To do this, we analyze a statute as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded.

Property Code section 12.0071 allows a lis pendens to be expunged and details the expunction's effects:

> After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:
>
> (1) does not:
>
>> (A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;
>>
>> (B) create any duty of inquiry in a person with respect to the property described in the notice; or
>>
>> (C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and
>
> (2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

8

TEX. PROP. CODE § 12.0071(f)(1)–(2).

Cohen's primary contention before the court of appeals was that Sandcastle and NewBiss could not conclusively establish their bona-fide-purchaser affirmative defense because they had separate notice of the claim on the property—disqualifying knowledge obtained by means independent of the lis pendens filing. Such knowledge, Cohen urged, could not be effectively undermined by the expunction statute because independent actual notice does not constitute information contained in "the notice of lis pendens" or "any information derived from the notice." *Id.* § 12.0071(f).

The court of appeals rejected what it saw as a narrow view of the statute and instead advanced a bright-line rule that the expunction of notice includes *any notice* of the claims involved in the underlying suit covered by the lis pendens. 469 S.W.3d at 186 ("[E]xpunction . . . effectively extinguishes 'notice' of the claims identified in the notice of lis pendens . . . ."). But the court of appeals reads the plain text of the statute too broadly. We agree with the dissenting justice that "[t]he statute simply doesn't address the circumstance of a purchaser who receives notice of a third-party claim by some means other than a recorded notice of lis pendens." *Id.* at 190 (Massengale, J., dissenting).

Property Code section 12.0071(f) provides that a purchaser cannot be charged with record notice, actual or constructive, following a proper expungement. But the extent of that protection is expressly limited to "the notice of lis pendens" and "any information derived from the notice." TEX. PROP. CODE § 12.0071(f). "[B]y negative implication, expunction is given no effect with respect to

the universe of other information, not included in the scope of section 12.0071(f), that is neither (a) the 'notice of lis pendens' itself nor (b) 'information derived from the notice' of lis pendens." 469 S.W.3d at 191.

Sandcastle and NewBiss also rely on section 12.0071(f)(2) of the Property Code to argue that expungement destroys all information that *could have been* derived from the notice, no matter the actual source. That provision specifies that the notice of lis pendens and any information derived from the notice "is not enforceable against a purchaser or lender . . . regardless of whether the purchaser or lender knew of the lis pendens action." But the interpretation Sandcastle and NewBiss would have us give subsection (f)(2) ignores its context. Subsection (f)(2) is subject to the unindented portion of section 12.0071(f)—the portion that delimits the expungement to "the notice of lis pendens" and "any information derived from the notice." TEX. PROP. CODE § 12.0071(f).[13]

Derived, by definition, refers to a particular source of information. *See Derive*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 608 (2002) (defining derive as "to take or receive esp. from a source"); *accord Derive,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 489 (5th ed. 2016) ("To obtain or receive from a source . . . ."). The interpretation Sandcastle and NewBiss endorse impermissibly enlarges the provision's meaning and operation, which directs expunction of a recorded lis pendens notice and eradicates the effects of filing one. If the Legislature meant to go further and include any information that *could have been derived* from the notice, it could

---

[13] To the extent there is disharmony between the provisions, the "material contained in unindented texts relates to all the following . . . indented subparts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012).

have said so explicitly.[14] Absent a plainer pronouncement from the Legislature, we must read the provisions together as a contextual whole in a manner that abides the scope set forth in section 12.0071(f).

The expunction statute specifically instructs that the recorded notice is expunged. *See* TEX. PROP. CODE § 12.0071(a) (describing process for party to apply to "expunge the notice"); *id.* § 12.0071(c) ("The court shall order the *notice of lis pendens* expunged . . . ." (emphasis added)); *id.* § 12.0071(f) ("After a certified copy of an order expunging a *notice of lis pendens* has been recorded . . . ." (emphasis added)). The fact that subpart (f) of section 12.0071 expressly precludes enforcement of the notice and information derived from the notice against a purchaser or lender "regardless of whether the purchaser or lender knew of the lis pendens action" merely confirms that the Legislature meant to address both actual and constructive notice arising from the lis pendens filing and the information contained in that notice.[15] We decline to construe the provision to mean that *any* information coextensive with the information contained in the notice or the underlying litigation that may be obtained independently is also legally eradicated. Such separate means of notice is necessarily unrelated to the actual expungement and exceeds the reach expressed by the statutory language.[16]

---

[14] Indeed, the Legislature now has. The amended provision applies to "the notice of lis pendens and any information derived or that could be derived from the notice." *See* TEX. PROP. CODE § 12.0071(f) (as amended by Act of May 9, 2017, S.B. 1955).

[15] "The party filing a lis pendens or the party's agent or attorney shall sign the lis pendens, which must state: (1) the style and number, if any, of the proceeding; (2) the court in which the proceeding is pending; (3) the names of the parties; (4) the kind of proceeding; and (5) a description of the property affected." TEX. PROP. CODE § 12.007(b).

[16] We conform to the Legislature's usage throughout the lis pendens statute and treat the notice of lis pendens and the underlying action as distinct. *See, e.g.*, TEX. PROP. CODE § 12.0071(a) ("A party to an action in connection with which a notice of lis pendens has been filed . . . ."); *id.* § 12.0071(f)(1)(A) (discussing the effect of expungement of notice as to "any matter contained in the *notice* or of any matter relating to the *proceeding*" (emphasis added)).

11

Accordingly, to the extent the recorded lis pendens puts a potential buyer on inquiry notice to look to the actual lawsuit before the notice's expunction, that buyer could claim protection under the statute. Any actual awareness obtained by review of the facts referred to in the lis pendens cannot be used to rebut that purchaser's status as a bona-fide purchaser or to continue to burden the property.[17] But that does not mean the expunction statute can be read so far as to eradicate notice arising independently of the recorded instrument expunged. We are confined by a statute's text as written. *See, e.g.*, *Simmons v. Arnim*, 220 S.W. 66, 71 (Tex. 1920) ("Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere.").

Expunction of the lis pendens is a restoration of the chain of title free of the record notice of a potential claim of interest associated with the lis pendens. It is not an adjudication of a later purchaser's status as a bona-fide purchaser under any set of circumstances.[18] Such an overbroad

---

[17] The ultimate effect of a lis pendens notice is to deprive either party in the litigation of the ability to alienate the property in dispute. *See Black v. Burd*, 255 S.W.2d 553, 555 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.). "Under the rule, one acquiring an interest in property from a party pending litigation in regard to it is bound by the result." *Gantt*, 246 S.W.3d at 303 (explaining that a judgment in such a case will bind the purchaser from a party to the litigation as it does the party of record and the filed lis pendens operates as constructive notice to a prospective buyer).

[18] Other sources of information can alert a potential purchaser of a possible claim of interest on a property. Perhaps someone is residing on the property or there are new visible improvements on it. *See Madison v. Gordon*, 39 S.W.3d 604, 607 (Tex. 2001) (acknowledging that occupant's possession provides constructive notice); *cf. Valdez v. Diamond Shamrock Ref. & Mktg. Co.*, 842 S.W.2d 273, 276 (Tex. 1992) ("[W]e hold that as a matter of law, a purchaser's knowledge that improvements have been recently made on a single piece of property is sufficient to impose constructive notice of a worker's right to assert a mechanic's lien within the statutory period."); *see also Parker v. McGinnes*, 842 S.W.2d 357, 362 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding "[t]here was no actual and visible appropriation of the lots that would have given notice of claim of ownership" in adverse possession case). Perhaps other individuals inform the potential buyer of similar facts to those included in the notice of lis pendens. The expunction statute does not address these situations which must be addressed by the fact finder in determining whether a buyer is a bona-fide purchaser.

interpretation of the statute risks "imbuing an expungement of a notice of lis pendens with the claim-preclusive effect of a full-blown adverse judgment on the merits." 469 S.W.3d at 193. As in this case, that means persons claiming an interest in property may be left in a worse position for having filed a lis pendens that is later expunged than had they not filed one. That result runs counter to longstanding Texas law encouraging the recording of real-property interests, including the filing of a lis pendens. *Id.*; *see also* TEX. PROP. CODE §§ 13.001–.004 (detailing the effects of not recording and the protections afforded to those who record their property interests).

Legislative enactments of the same subject should be harmonized whenever possible. *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Our interpretation is faithful to the expungement statute's plain language and is consistent with the larger statutory framework. We acknowledge other sound policies might lie in a different interpretation of the words the Legislature chose. But this is not a case in which a plain-language interpretation would frustrate the statutory scheme at issue. Rather, there are perfectly good reasons the Legislature might have intended the interpretation we adopt today. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on.").

\* \* \*

Cohen alleges that both Sandcastle and NewBiss had actual, independent knowledge of the issues covered by the lis pendens notice. Whether that is true is an unresolved fact issue precluding summary judgment. In light of Cohen's allegation, Sandcastle and NewBiss have not established

13

bona-fide-purchaser status simply by relying on the expungement order. We reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

_____

Jeffrey V. Brown
Justice

OPINION DELIVERED: June 16, 2017